UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| ANGELA J. GREENE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 2:18-CV-139-HBG |
| | ) |
| MERCEDES-BENZ, USA, and | ) |
| PREFERRED WARRANTIES, INC., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION

This case is before the undersigned pursuant to 28 U.S.C. § 636(c), Rule 73 of the Federal Rules of Civil Procedure, and the consent of the parties, for all further proceedings, including entry of judgment [Doc. 31].

Now before the Court is Defendant Preferred Warranties, Inc.'s Motion for Summary Judgment [Doc. 59]. The Court granted the Plaintiff an extension of time to file a response on or before January 10, 2020 [Doc. 71]. No response has been filed and the Motion is now ripe for adjudication. Accordingly, for the reasons further explained below, the Court finds Defendant's Motion [**Doc. 59**] well taken, and it is **GRANTED**.

### I. BACKGROUND

The Complaint in the instant matter alleges that Defendant Preferred Warranties, Inc. ("PWI") breached a service contract to repair a 2013 Mercedes-Benz E350 automobile purchased used by the Plaintiff. The Plaintiff seeks damages against PWI for breach of contract and for emotional distress and/or outrageous conduct [Doc. 34]. The following facts are taken from the record in this case:

1.  Plaintiff purchased a used 32013 Mercedes-Benz E350 (the "Car") from defendant Automobili Limited LLC ("Automobili") for $37,000.00 on or about April 20, 2015 [Doc. 34].

2.  Defendant Mercedes-Benz USA,LLC ("MBUSA") was the original distributor of the Car and issued a written limited warranty for the Car at the time of original delivery [Doc. 34].

3.  At the time of Plaintiff's purchase of the Car, she also purchased a service contract for the Car issued by PWI for $2,810.00 [Doc. 34].

4.  A true and correct copy of the Vehicle Service Contract ("the Service Contract") dated April 20, 2015 on which her allegations against PWI are founded is a part of the record.

5.  Plaintiff alleges that within one month of purchase the vehicle's engine "was completely in ruin" [Doc. 1 at ¶ 15] and that none the defendant PWI would cover the cost of repairs [Doc. 34].

6.  The section of the Service Contract captioned "**What is Covered by This Agreement**" specifically provides:

>   Except as explained below, Administrator agrees to replace or repair parts listed in the Coverage description below **if those parts are worn beyond serviceable limits**. (Emphasis added).

7.  The coverage section of the Service Contact states "**Please read carefully. See the statement of what is not covered below,**" which referenced statement in bold provides:

>   **THIS SERVICE CONTRACT DOES NOT COVER**
>
>   …
>   7.  Benefits for a breakdown cause by abuse, misuse, alterations or **lack of customary maintenance** as recommended in the maintenance requirements of the service contract and/or in the manufacturer's maintenance schedule for your vehicle.
>   8.  Benefits for a breakdown caused by contamination, overheating, **lack of coolant or lubricants, lack of oil viscosity, sludge or restricted oil flow. Examples include but not limited to: engine and transmission.**

2

9. Benefits for a breakdown when contaminated fluids cause or contributed to the breakdown.
10. Benefits for a breakdown which existed prior to or was **caused by a condition which existed prior to the service contract purchase date.**
…
12. Costs covered by any warranty of the manufacturer or supplier; state required warranty; dealer warrant or repair facility's guaranty regardless of whether they honor such warranty or guaranty.

8. Plaintiff's maintenance obligations under the Service Contract include the duty to maintain the Car under the standards of the manufacturer as follows:

> **YOUR MAINTENANCE OBLIGATIONS**
> **YOU have certain duties, including the duty to maintain the vehicle under the standards of the manufacturer and the duty to protect against any further damage caused by continue operation. YOU must have the automobile covered by this Agreement serviced as follows (1) Change engine oil and filter to manufacturer's specifications.** (2) Check and maintain fluid levels, including: coolant, transmission, brake system master cylinder, power steering pump, front and/or rear axle. (3) follow all other manufacturer recommendations as provided in the owner's manual. YOU must save all receipts for service performed on the vehicle covered by this Agreement. **Your failure to have service to the Covered Vehicle in the manner described above may result in the denial of claims presented under this agreement.**

9. Plaintiff acknowledged and agreed that the Car was in good, working order when purchased and that PWI's liability under the Service contract cannot exceed the purchase price, as follows:

> **LIMIT OF LIABILITY**
> **. . . The total of all benefits paid or payable during the term of this contract shall not exceed the purchase price paid for the [Car].**
>
> **INSPECTING THE COVERED VEHICLE**
> By signing this Agreement, YOU agree that **YOU have inspected the [Car] prior to signing this Agreement and that when you signed this Agreement, the [Car] was in good, working order. . . .**

10. The Plaintiff communicated with Greg Durham at Rick Hill Imports, Mercedes-Benz in Kingsport, TN in May 2015 concerning the issues with the engine of the Car.

3

11. According to PWI's internal claim notes, on June 11, 2015, the Plaintiff reported to PWI that she "was told by [Greg Durham, Rick Hill Imports, MB Kingsport] that the [Car] is full of sludge and they have no service records for this [Car] and they believe it has not been maintained."

12. When Plaintiff acquired the Car from Automobili, it was still under the Mercedes factory warranty by time and mileage.

13. The service department invoice issued by Rick Hill Imports dated 5/18/15 states in respect to the Car that "Engine Locked Up Due to Lack of Maint."

14. The only factual allegation Plaintiff makes regarding PWI's conduct is that "[PWI] refused to honor the extended warranty with the plaintiff due to the Mercedes' warranty was voided." [Doc. 44, ¶ 19].

15. Plaintiff makes no allegations that anyone at PWI was abusive, threatening, or acted in a harmful or malicious way toward Plaintiff.

16. This lawsuit was not filed until August 21, 2018, although Plaintiff's claims as alleged in the Second Amended Complaint would have accrued in approximately May/June 2015 [Doc. 1; Doc. 44].

17. Plaintiff has not designated any experts to testify in this case, and the deadline for doing so was July 19, 2019 [Doc. 43].

**II. POSITIONS OF PARTIES**

Defendant PWI moves [Doc. 59] for summary judgment arguing that there are no genuine issues of material fact. PWI argues that in order to satisfy the condition precedent to coverage under PWI's Service Contract, plaintiff must establish that the alleged breakdown of the Car was caused by parts "worn beyond serviceable limits." PWI also asserts that the Plaintiff must show

that she complied with her maintenance obligations, under the Service Contract, to maintain the Car under the standards of the manufacturer. PWI argues that expert testimony is required for Plaintiff to establish her prima facie case, and she has not done so [Doc. 60].

The Plaintiff has not filed a response in opposition to PWI's Motion For Summary Judgment. In her Complaint, Plaintiff generally avers that PWI breached a service contract on the Car [Doc. 2, ¶ 12 and 18].

### III. STANDARD OF REVIEW

Summary judgment under Rule 56 of the Federal Rules of Civil Procedure is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of establishing that no genuine issues of material fact exist. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 n. 2 (1986); *Moore v. Philip Morris Cos., Inc.*, 8 F.3d 335, 339 (6th Cir. 1993). All facts and all inferences to be drawn therefrom must be viewed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Burchett v. Kiefer*, 301 F.3d 937, 942 (6th Cir. 2002).

"Once the moving party presents evidence sufficient to support a motion under Rule 56, the nonmoving party is not entitled to a trial merely on the basis of allegations." *Curtis v. Universal Match Corp.*, 778 F. Supp. 1421, 1423 (E.D. Tenn. 1991) (citing *Celotex*, 477 U.S. at 317). To establish a genuine issue as to the existence of a particular element, the non-moving party must point to evidence in the record upon which a reasonable finder of fact could find in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The genuine issue must also be material; that is, it must involve facts that might affect the outcome of the suit under the governing law. *Id.*

The Court's function at the point of summary judgment is limited to determining whether sufficient evidence has been presented to make the issue of fact a proper question for the finder of fact. *Anderson*, 477 U.S. at 250. The Court does not weigh the evidence or determine the truth of the matter. *Id.* at 249. Nor does the Court search the record "to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989). Thus, "the inquiry performed is the threshold inquiry of determining whether there is a need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson,* 477 U.S. at 250.

## IV. ANALYSIS

The Court has reviewed the parties' positions as outlined above, and for the reasons further explained below, the Court finds Defendant's Motion [**Doc. 59**] well taken, and it is **GRANTED**. The section of the Service Contract captioned "**What is Covered by This Agreement**" provides in pertinent part that: "[e]xcept as explained below, Administrator agrees to replace or repair parts listed in the Coverage description below **if those parts are worn beyond serviceable limits."** (Emphasis added). To satisfy that condition of coverage under the Service Contract, the Plaintiff has the burden to establish that, notwithstanding the fulfillment of her maintenance obligations, the alleged breakdown of the Car was due to listed "Parts Covered" being "worn beyond serviceable limits." *See Isaacs v. Marion & Green Roofing & Sheet Metal Co.*, 1994 WL 527138, at *1 (Tenn. Ct. App. Sept. 28, 1994) (plaintiffs failed to carry the burden of proof on their claims against defendant for "breach of express warranties, negligence, breach of implied warranties and breach of contract"); *Mountain Laurel Assur. Co. v. Salinas*, 994 F. Supp. 2d 914 (W.D. Tenn. 2014) (burden of proof regarding a condition to coverage falls on the party claiming coverage).

The Court agrees with the movant that determination of whether the alleged Car breakdown was due to listed "Parts Covered" being "worn beyond serviceable limits" requires specialized or technical knowledge. Where the question involved is beyond the understanding of the lay mind, expert testimony will be required, *See Trial Handbook for Tenn. Law* § 24:17 (citing *Nat'l Life & Acc. Ins. Co. v. Follett*, 168 Tenn. 647, 80 S.W.2d 92, 94, (1935)). The Plaintiff, however has presented no expert opinion to support such a claim. As a result, the Plaintiff can not carry her burden to establish a prima facie case and avoid summary judgment.

The Plaintiff also alleges that "[t]he conduct of [PWI] has been extreme and outrageous in this matter so as to justify the plaintiff's need for compensation in this matter" and "[t]he outrageous and extreme conduct of [PWI] in [sic] the direct case of the emotional distress of the plaintiff" [Doc. 44, ¶¶ 41-42]. PWI argues, and the Court agrees, that it is unclear whether Plaintiff is alleging a claim of intentional infliction of emotional distress against PWI or damages for emotional distress caused by PWI's alleged breach of contract.

This claim, however, can be resolved as a matter of law, based on the record in this case. To the extent the Plaintiff is seeking emotional distress damages for PWI's alleged breach of contract, the court holds that a claim for breach of contract alone will not support emotional distress damages. *See Johnson v. Woman's Hospital*, 527 S.W.2d 133, 141 (Tenn.Ct.App. 1975) (noting that "[t]he general rule is that punitive damages are not recoverable in a contract action and neither are damages for mental anguish, since it is not in tort and there is no physical injury").

To the extent that Plaintiff is alleging infliction of emotional distress related to PWI's alleged breach of contract, Plaintiff has failed to support such a claim. Intentional infliction of emotional distress requires: (1) intentional or reckless conduct; (2) the conduct must be so outrageous that it is not tolerated by civilized society; and (3) the conduct needs to result in serious

mental injury. *See Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn.Sup.Ct. 1997). The rule in Tennessee is that the actionable conduct under this tort must be set out in the pleadings. *See Chandler v. Prudential Ins. Cco.*, 715 S.W.2d 615, 622 (Tenn. Ct. App. 1986) (citing *Medlin v. Allied Investment Co.*, 398 S.W.2d 270 (Tenn. 1966)).

The only factual allegation Plaintiff makes regarding PWI's conduct is that "[PWI] refused to honor the extended warranty with the plaintiff due to Mercedes' warranty was voided." [Doc. 44, ¶ 19]. The Court finds that this alleged conduct, even if true, is not such outrageous behavior, "so extreme in degree, as to go beyond all bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Bain*, 936 S.W.2d at 623.

PWI relies on the following holding of the Tennessee Court of Appeals: "[a] breach of contract, even if clear, is not by itself actionable under the tort of outrageous conduct, nor will a negligent or inadvertent act give rise to such a claim." *Chandler v. Prudential Ins. Co.*, 715 S.W.2d 615, 623 (Tenn.Ct.App.1986). In *Chandler*, the plaintiff alleged outrageous conduct on the part of Prudential where Prudential terminated plaintiff's long-term disability benefits. The court dismissed the plaintiffs claim, finding that "[t]here is no evidence that Prudential or its agents were abusive, threatening, or that they acted in a harmful or malicious way toward plaintiff. From the time Prudential made its decision to terminate the benefits until the date plaintiff filed suit, Prudential corresponded with her but one time." *Chandler*, 715 S.W.2d at 623.

The Court finds that Plaintiff in the present case fails to state a cause of action, because no instances of abusive or outrageous conduct are alleged in the Complaint. Plaintiff makes no allegations that anyone at PWI was abusive, threatening, or acted in a harmful or malicious way toward Plaintiff. The Plaintiff's allegations of outrageous conduct utilize conclusory words at the same time tracking the elements of the tort. The *Chandler* court did find that this is not sufficient.

PWI also states that this lawsuit was not filed until August 21, 2018, although Plaintiff's claims as alleged in the Second Amended Complaint would have accrued in approximately May/June 2015. Therefore, PWI argues that Plaintiff's claims for infliction of emotional distress are also subject to dismissal pursuant to the one-year personal injury statute of limitations contained in Tenn. Code. Ann. § 28-3-104(a)(1). *See*, *e.g.*, *Field v. Graffagnino*, 514 F.Supp. 2d 1036, 1043 (W.D. Tenn. 2007) ("The following actions shall be commenced within one (1) year after the cause of action accrued: (1) Actions ... for injuries to the person …"); *Harvey v. Martin*, 714 F.2d 650, 652 (6th Cir. 1983) (claim for intentional infliction of emotional distress governed by one year statute of limitations prescribed by Tenn. Code. Ann. § 28-3-104). The Court agrees, and finds that the infliction of emotional distress claim is barred by the applicable statute of limitations and must be dismissed as a matter of law.

## V. CONCLUSION

Accordingly, for the reasons explained above, there is no dispute as to any material fact and movant is entitled to judgment as a matter of law. The Court finds Defendant's Motion for Summary Judgment [**Doc. 59**] is well taken, and it will be **GRANTED**. A separate order will enter.

ORDER ACCORDINGLY.

_____
United States Magistrate Judge